

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed November 9, 2007**                              **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| AMY ELIZABETH TRAMMELL, | § | CASE NO. 07-31384-BJH-13 |
| | § | |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the First Amended Motion to Lift Automatic Stay by Honda Financial

Services ("Honda") pursuant to 11 U.S.C. § 362(d)(1) and (d)(2) (the "Amended Motion"). The

Court has jurisdiction over the Amended Motion and the parties pursuant to 28 U.S.C. §§ 1334 and

157(b)(2)(G). For the reasons set forth below, the Amended Motion is denied, as the Court

concludes that the vehicle subject to Honda's lien is not property of the estate and the stay does not

prevent Honda's acts to obtain possession of the vehicle or to exercise control over the vehicle.

**Memorandum Opinion and Order**

I.      **Factual and Procedural Background**

Amy Elizabeth Trammell (the "Debtor") filed a voluntary petition for relief under Chapter 13 on March 23, 2007 (the "Case"). On Schedule B to the petition, the Debtor listed a community property interest in a 2002 Honda Accord, valued at $12,000 (the "Vehicle"). The Debtor claimed the Vehicle as exempt pursuant to 11 U.S.C. § 522(d)(2) and (d)(5).[1] On Schedule D, Honda was listed as a creditor holding a $12,000 claim secured by the Vehicle.

This is the third time that the Vehicle has been subject to the jurisdiction of the bankruptcy court. On September 3, 2004, the Debtor and her husband, Clayton G. Trammell ("Trammell") filed a joint voluntary petition for relief under Chapter 13 (the "First Case"). *See* Case No. 04-39523-SAF. The Debtor and Trammell listed a community property interest in the Vehicle on Schedule B, claimed the Vehicle as exempt on Schedule C, and listed Honda as the lienholder on the Vehicle on Schedule D. The First Case was dismissed without prejudice by order entered on April 27, 2005, prior to confirmation of a Chapter 13 plan, because the debtors defaulted in their pre-confirmation plan payments. Honda did not seek relief from the automatic stay during the pendency of the First Case.

On May 7, 2005, Trammell alone filed a voluntary petition for relief under Chapter 13 (the "Second Case"). *See* Case No. 05-35254-SGJ. Once again, Trammell listed a community property interest in the Vehicle on Schedule B, claimed the Vehicle as exempt on Schedule C, and listed Honda as the lienholder on the Vehicle on Schedule D. Trammell's Chapter 13 plan was confirmed

---

[1] There was some discussion at the hearing on the Amended Motion about the propriety of the Debtor's claim of exemption in the Vehicle. However, the meeting pursuant to 11 U.S.C. § 341 was held and concluded on April 26, 2007. No one filed an objection to the claim of exemption in the Vehicle, and the time to do so has long passed. Accordingly, the Vehicle is exempt. 11 U.S.C. § 522(l); *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992).

on March 30, 2006. However, the Second Case was dismissed without prejudice nearly a year later, on March 6, 2007, because Trammell defaulted in his plan payments. Honda did not seek relief from the automatic stay during the pendency of the Second Case.

Documents attached to the Amended Motion in this third Case establish that Trammell alone signed the retail installment contract with Honda when the Vehicle was purchased in 2002, and that Trammell alone is the record titleholder of the Vehicle. The Debtor testified, however, that the Vehicle was acquired during the marriage between Trammell and her. She further testified that she sat next to Trammell when he bought the Vehicle, and that she didn't sign the loan application because Trammell made more money than she did. She also testified that she drives the Vehicle every day. It is undisputed that the Vehicle is community property under Texas state law.

The Amended Motion alleges that Trammell is in arrears to Honda on the Vehicle payments and is not maintaining insurance on the Vehicle, and that the Vehicle is declining rapidly in value.[2] Honda also alleges that the Vehicle is worth less than the amount owed to Honda and that the Debtor therefore has no equity in the Vehicle.[3] Lastly, Honda alleges that the Vehicle has been listed in two prior bankruptcy proceedings, and that the Debtor is not a party to the contract with Honda.

The Court heard the Amended Motion on May 22, 2007. The Debtor, and no other witness, testified at the hearing. At the conclusion of the hearing, the Court directed further briefing on legal issues raised for the first time during oral argument on the Amended Motion. The last of those briefs

[2] Honda did not put on any evidence to support these allegations at the hearing on the Amended Motion.

[3] Honda failed to allege that the Vehicle was not necessary for an effective reorganization. Moreover, Honda presented no evidence of the amount of the debt currently owed to it, or of the current value of the Vehicle. However, the Debtor valued the Vehicle at $12,000 on her schedules and listed the debt owed to Honda at the same amount. Accordingly, the Debtor has conceded that there is no equity in the Vehicle.

**Memorandum Opinion and Order** **3**

was filed on June 21, 2007, following which the Court took the Amended Motion under advisement.

However, the Case was dismissed shortly thereafter, without a ruling having been issued. It recently

came to the Court's attention that the dismissal was vacated and the Case was reinstated by order

entered on September 4, 2007. Therefore, the Court will rule upon the Amended Motion at this time.

## II.     Legal Analysis

The parties' legal arguments have undergone significant transformation since Honda's filing

of the original motion for relief from stay (the "Original Motion"). In the Original Motion, Honda

alleged that cause existed to lift the automatic stay because Honda lacked adequate protection

pursuant to 11 U.S.C. § 362(d)(1), and that the Debtor lacked equity in the Vehicle pursuant to 11

U.S.C. § 362(d)(2). The Debtor filed a response, contending that she was making adequate

protection payments through the Chapter 13 Trustee's office,[4] and that the Vehicle was necessary

for her reorganization because it is her primary means of transportation. After discovering that only

Trammell, and not the Debtor, was on the certificate of title to the Vehicle, Honda filed the Amended

Motion which, among other things, added an allegation that "cause" exists for relief from stay

because of the serial bankruptcy filings that have affected the Vehicle.[5]

---

[4]The Debtor testified at the hearing on the Amended Motion, without contradiction, that the Vehicle is, and always has been, insured. As noted previously, Honda did not present any evidence that the Vehicle is declining in value. Honda did not present any evidence with respect to the value of the Vehicle or the amount owed to Honda. Nor did Honda present any evidence that the Debtor or Trammell are not making current payments on the Vehicle. The Amended Motion simply alleges that Trammell is "in arrears" on monthly payments – it does not specify whether those arrears are pre- or post-petition.

[5] It is well established that a lack of good faith can constitute "cause" for relief from the automatic stay. *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986); *In re Coleman*, No. 399-CV-1642-P, 1999 WL 787401 (N.D. Tex. Sept. 30, 1999); *In re Valdez*, 324 B.R. 296 (Bankr. S.D. Tex. 2005). It is also clear that serial bankruptcy filings *may* indicate bad faith. *In re Smith*, 286 F.3d 461 (7th Cir. 2002).
    In this Case, the Debtor testified that her husband is an architect with a steady income, but that her income has wavered since the birth of their daughter prematurely in 2003. According to the Debtor, her daughter suffers from an immune deficiency disorder which took over a year to diagnose. The Debtor testified that while her daughter was in and out of the hospital and unable to go to daycare, the Debtor was not able to work. The Debtor testified that

**Memorandum Opinion and Order**                                                                                    **4**

At the hearing on the Amended Motion and in its post-hearing briefing, Honda asserts that it is not a "creditor" and that the automatic stay does not apply because the Vehicle is not property of the Debtor's estate. In other words, Honda now asserts that the automatic stay does not apply because only Trammell, and not the Debtor, is on the certificate of title to the Vehicle and only Trammell, and not the Debtor, signed the retail installment contract with Honda.

A.      **The Vehicle is not Property of the Estate**

Under Section 541(a) of the Bankruptcy Code, a bankruptcy estate consists of, among other property, "all interests of the debtor *and the debtor's spouse* in community property as of the commencement of the case that is (a) under the sole, equal, or joint management and control of the debtor; or (b) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable." 11 U.S.C. § 541(a)(2) (emphasis added). The term "community property" is not defined in the Bankruptcy Code, but it is a "term of art referring to that certain means of holding marital property in those states which have adopted a community property system." *In re Robertson*, 203 F.3d 855, 859 (5th Cir. 2000) (citing 5 *Collier on Bankruptcy* ¶ 541.13[1] (15th ed. 1999)). State law determines whether property is characterized as separate or community property, *In re McCloy*, 296 F.3d 370 (5th Cir. 2002); *see also Butner v. United States*, 440 U.S. 48, 54 (1979), and the purpose

---

both the First Case and the Second Case were dismissed because she and Trammell were unable to keep up with the plan payments.

The Debtor testified that in December of 2006, she started her own business designing, making, and selling childrens' clothing, which earns her $1,200 per month in profit. The Debtor also testified that her daughter has begun to outgrow her health problems and now goes to daycare, and the Debtor has secured a job teaching at the First United Methodist Church in Cedar Hill, Texas and caring for children in her home over the summer.        As noted earlier, Honda did not seek relief from the automatic stay in either the First Case or the Second Case – despite the fact that the Second Case was pending for nearly 22 months. There is no evidence before the Court that suggests that the First Case or the Second Case were filed in order to frustrate Honda's enforcement of its remedies in the event of default.

of Section 541(a)(2) is "to pass to the bankruptcy estate the community property which would otherwise be available under applicable state law for the satisfaction of claims against the debtor." 5 *Collier on Bankruptcy*, ¶ 541.13[1] (15th ed. rev. 2007).

Under Texas law, community property generally consists of all property, other than separate property,[6] acquired by either spouse during the marriage. Tex. Fam. Code Ann. § 3.002 (Vernon 2006). Moreover, property possessed by either spouse during the marriage is presumed to be community property, and the degree of proof necessary to establish that property is separate property is clear and convincing evidence. Tex. Fam. Code Ann. § 3.003 (Vernon 2006). Specifically, Texas courts have ruled that the "administrative presumption" of ownership created by a motor vehicle title is insufficient to overcome the legal presumption of community property. *Lust v. General Motors Acceptance Corp.*, 395 S.W.2d 847, 850 (Tex. App. – Tyler 1965). Here, there is no evidence that the Vehicle, which was acquired during the marriage, is anything other than community property. As such, the Vehicle is property of the Debtor's bankruptcy estate if it was either under the sole, equal or joint management and control of the Debtor, 11 U.S.C. § 541(a)(2)(A), or if the Debtor's interest in the Vehicle is liable for an allowable claim against the Debtor or against the Debtor and Trammell. 11 U.S.C. § 541(a)(2)(B).

### 1.    The Vehicle is Trammell's Sole Management Community Property

Texas recognizes both sole and joint management community property. Tex. Fam. Code Ann. § 3.102 (Vernon 2006). Sole management community property is that property which, though

---

[6] Separate property consists of the property owned by the spouse prior to marriage, property acquired by the spouse during marriage by gift, devise, or descent, and the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. Tex. Fam. Code Ann. § 3.001 (Vernon 2006).

**Memorandum Opinion and Order**                                                                                          **6**

acquired during the marriage, would have belonged to that spouse if single. *Id*.; *Montemayor v. Ortiz*, 208 S.W.3d 627 (Tex. App. – Corpus Christi 2006). Such property is sometimes referred to as "special community property." *Sprick v. Sprick*, 25 S.W.3d 7 (Tex. App. – El Paso 1999). All other community property is subject to the joint management, control, and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or by some other agreement. Tex. Fam. Code Ann. § 3.102(c) (Vernon 2006).

Specifically, Section 3.102(a) of the Texas Family Code, entitled "Managing Community Property," provides:

> (a) During marriage, each spouse has the sole management, control, and disposition
> of the community property that the spouse would have owned if single, including:
> (1) personal earnings;
> (2) revenue from separate property;
> (3) recoveries from personal injuries; and
> (4) the increase and mutations of, and the revenue from, all property
> subject to the spouse's sole management, control, and disposition.

Tex. Fam. Code Ann. § 3.102(a) (Vernon 2006). Certainly, the Vehicle does not fall within any of the specific categories of property listed in Section 3.102(a). However, the term "including" is one of "enlargement and not of limitation or exclusive enumeration, and use of the term[] does not create a presumption that components not expressed are excluded." Tex. Gov't Code Ann. § 311.005 (Vernon 2005).[7]

In this instance, Trammell would have owned the Vehicle if single, since it is undisputed that

---

[7] The Court notes that the predecessor to Section 3.102(a), Section 5.22 of the Texas Family Code, provided that "[d]uring marriage, each spouse has the sole management, control, and disposition of the community property that he or she would have owned if single, including *but not limited to*" the same four categories of property appearing in Section 3.102(a). In 1997, Section 5.22 was repealed and Section 3.102 was enacted, with the deletion of the phrase "but not limited to." The parties have not cited the Court to any legislative history discussing this change and the Court's independent research has not revealed any. The Court presumes, however, in light of Section 311.005 of Texas's Government Code (known as the Texas Code Construction Act), that the phrase "but not limited to" was deleted as surplusage.

it is titled solely in his name. *Cf.* Tex. Family Code Ann. § 3.104(a) (Vernon 2006) (during marriage, "property is presumed to be subject to the sole management, control, and disposition of a spouse if it is held in that spouse's name, as shown by muniment, contract, deposit of funds, or other evidence of ownership . . . ."[8] Accordingly, it appears that the Vehicle is Trammell's sole management community property.

The Debtor points out, however, that she drives the Vehicle daily, and contends that her use of the Vehicle makes it joint management community property. Texas courts have not articulated a test that can be readily applied to determine what facts will lead to the conclusion that the character of the property in question has been transformed from sole management community property to joint management community property, and there is scant Texas authority on the question. Nevertheless, the Court concludes that merely driving the Vehicle is insufficient to transform its character. There is no evidence in the record to suggest that by merely allowing his wife to drive the Vehicle, Trammell intended to relinquish his sole management and control of the Vehicle or to convey to her any rights to encumber the Vehicle or in any manner control its disposition.

For these reasons, the Court concludes that the Vehicle is Trammell's sole management

---

[8] The Debtor asserts that Section 3.104 of the Texas Family Code does not apply here, because "all of the cases found that rely on Family Code Section 3.104 . . . deal with a transfer of property out of the marital estate and the other spouse's complaint about the transfer . . . Thus, Family Code Section 3.104 acts only as a good faith purchaser safe harbor. As the current situation does not involve a transfer of property, Family Code Section 3.104 does not apply." *Debtor's Brief in Opp. To Mot. For Relief From Stay*, p. 7. It is true that Section 3.104 is most often applied where there has been a transfer of the property at issue. However, Section 3.104 of the Family Code is titled "Protection of Third Persons." While case law in Texas indicates that the presumption of sole management created by Section 3.104 does not apply where the dispute with respect to the status of the property is between the spouses themselves, *see, e.g., Wohlenberg v. Wohlenberg*, 485 S.W.2d 342 (Tex. App. – El Paso 1972), the present case is not a dispute between spouses. Instead, it involves a dispute as to the status of the Vehicle as between one spouse and a third party. Therefore, the Court is persuaded that Section 3.104 may properly apply in this circumstance and act to create a presumption of sole management in Trammell. However, as noted above, the presumption is not necessary in this Case, because Trammell would have owned the Vehicle if single and it is thus his sole management community property under Section 3.102 of the Texas Family Code.

community property and, as such, it is *not* "under the sole, equal, or joint management and control of the debtor" pursuant to Section 541(a)(2)(A) of the Bankruptcy Code. Accordingly, the Vehicle is not property of the Debtor's estate pursuant to Section 541(a)(2)(A).

**2.      The Vehicle is not Liable for an Allowable Claim Against the Debtor or the Debtor and Trammell**

The Debtor also argues that the Vehicle is property of her estate pursuant to Section 541(a)(2)(B) which, as noted above, sweeps into the bankruptcy estate "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable." In other words, the Debtor's community property interest in the Vehicle is property of the bankruptcy estate if it is liable for an allowable claim against her or against her and Trammell. For the reasons set forth below, the Court concludes that Honda does not hold an allowable claim against the Debtor or against both the Debtor and Trammell.[9] Accordingly, the Vehicle is not property of the estate under Section 541(a)(2)(B).

The Debtor argues that debts incurred during a marriage are presumed to be community debts, absent evidence that the creditor agreed to satisfy such debt solely from the separate property of one spouse. The Debtor also argues that the debt owed to Honda is a debt for which she is jointly liable within the meaning of Section 541(a)(2)(B), citing *Cockerham v. Cockerham*, 527 S.W.2d 162 (Tex. 1975). She argues that *Cockerham* and its progeny stand for the proposition that "to determine whether a debt is only that of the contracting party or if it is instead that of both the husband and

---

[9] Honda's only allowable claim is against Trammell.

wife, it is necessary to determine the totality of the circumstances in which the debt arose."

*Cockerham*, at 171. She further argues that "once the debt has been characterized as a community

liability, the individual facts of a particular case must be applied to see if the non-contracting spouse

acquiesced in or took benefits from the transaction in which the debt was incurred. If so, then the

debt is a joint liability." Debtor's Brief in Opp. to Mot. For Relief From Stay, p. 6. As she was

present when Trammell purchased the Vehicle and uses the Vehicle in her daily life, she argues that

"it seems clear that this is a joint liability." *Id*.

In contrast, Honda asserts that the Debtor is not personally liable to Honda. It argues:

> Debtor's name does not appear on the Retail Installment Sale Contract, so the
> only basis for imposing liability on her would be vicariously on an agency theory
> or because the vehicle was a "necessary." *See* Tex. Fam. Code § 3.201. There is no
> claim that Mr. Trammell was acting as debtor's agent in purchasing the vehicle
> and the marriage relationship does not in itself create an agency relation. *See Id.*
> sub-section (c); *Carr v. Houston Business Forms, Inc.*, 794 S.W.2d 849, 852 (Tex.
> App. – Houston [14th Dist.] 1990, no writ). Absent any evidence of agency, there
> remains only the question of whether the vehicle constitutes a "necessary" as that
> term is used in Tex. Fam Code § 3.201(a)(2). To make this determination, the
> court must follow the statute and look to Tex. Fam. Code Chapter 2, Subchapter
> F. (Tex. Fam Code § 2.501). This statute, like its predecessors, does not define the
> term "necessaries". To determine whether an automobile is a "necessary" compels
> an inquiry into the "needs of the family with reference to social position, wealth,
> surrounding circumstances, etc. …". *Fallin v. Williamson Cadillac Co.*, 40
> S.W.2d 243, 244 (Tex. Civ. App. – San Antonio 1931, n.w.h.). Presumably, the
> inquiry into the relevant family circumstances should be made at the time of the
> vehicle's purchase, September 2002. Debtor, however, has produced no evidence
> as to her and Mr. Trammell's income, expenses, debts, assets or life-style at that
> time . . . Indeed her only evidence is that she is the primary driver of the vehicle, a
> fact that tends strongly, if not conclusively, to refute her position that the vehicle is
> a necessary for Mr. Trammell. Accordingly, the vehicle is not property of the
> estate under § 541(a)(2)(B).

Brief of Honda Fin'l Servs. in Supp. Of Stay-Lift Motion, p. 5.

With these competing arguments in mind, the Court begins its analysis with the *Cockerham*

case, which involved divorcing spouses. The wife filed a petition in bankruptcy, and her bankruptcy trustee intervened in the divorce proceeding, hoping to secure rights on behalf of the wife's creditors prior to distribution of the marital property as between the spouses.

The husband, E.A. Cockerham, and his brother each owned a one-half interest in a 320-acre tract of real property prior to Cockerham's marriage. Ultimately, Mr. Cockerham's brother sold his interest in that property to E.A. Cockerham after the Cockerhams' marriage, and E.A. Cockerham operated a dairy business on the land during the marriage. Mrs. Cockerham operated a dress shop during the marriage.

Ultimately, the Texas Supreme Court held that one-half of the tract of real property was community property subject to the joint management and control of both spouses, and one-half of the tract was Mr. Cockerham's separate property. The Texas Supreme Court also ruled that the dairy business was community property subject to the joint management and control of the spouses.

As is relevant here, the Texas Supreme Court next addressed whether E.A. Cockerham's separate property interest in the tract of real property could be used to satisfy the dress shop debts. In so doing, the Texas Supreme Court construed the meaning and effect of the predecessor to Section 3.202 of the Texas Family Code, entitled "Rules of Marital Property Liability," which, both at the time the *Cockerham* case was decided and continuing to the present, reads in relevant part as follows: "(a) A spouses' separate property is not subject to the liabilities of the other spouse unless both spouses are liable by other rules of law." Tex. Fam. Code Ann. 3.202(a) (Vernon 2006).

In other words, the *Cockerham* court was deciding whether E.A. Cockerham's one-half interest in the 320-acre tract that was his separate property was liable for the dress shop debts – *i.e.*, whether those debts constituted "the liabilities of the other spouse" within the meaning of the

**Memorandum Opinion and Order** **11**

predecessor to Section 3.202(a) of the Texas Family Code. It is in this context that the Texas Supreme Court articulated its oft-quoted statement that "to determine whether a debt is only that of the contracting party or if it is instead that of both the husband and wife, it is necessary to examine the totality of the circumstances in which the debt arose." *Cockerham*, at 171. The *Cockerham* court then noted the following facts in support of its conclusion that the dress shop debts were joint liabilities of E.A. Cockerham and his wife. E.A. Cockerham had advanced his wife funds to buy the store's inventory. He allowed his wife to sign his name to checks on an account in his name only to pay for dress shop inventory. In at least one instance, he himself signed a check to pay operational expenses of the dress shop from the account in only his name. He borrowed funds to pay off some dress shop debts, stating that "I have always paid my debts." *Cockerham*, at 172. E.A. Cockerham and his wife filed joint tax returns and took depreciation deductions on the dress shop equipment and wrote off substantial operating losses, such that the Cockerhams paid little if any income taxes, even though E.A. Cockerham had substantial income from his dairy business.

On these facts, the *Cockerham* court concluded that the dress shop debts were not "liabilities of the other spouse" within the meaning of the Texas Family Code. In other words, the Texas Supreme Court concluded that E.A. Cockerham's acts (as described above) caused him to be liable, along with his wife, for the dress shop debts. The *Cockerham* court therefore held that E.A. Cockerham's separate one-half interest in the 320-acre tract was subject to liability for the dress shop debts.

Many years after *Cockerham* was decided, Texas enacted what is now Section 3.201 of the

Texas Family Code.[10] Section 3.201, entitled "Spousal Liability," provides:

> (a) A person is personally liable for the acts of the person's spouse only if:
>> (1) the spouse acts as an agent for the person; or
>> (2) the spouse incurs a debt for necessaries as provided by Subchapter F, Chapter 2.
> (b) Except as provided by this subchapter, community property is not subject to a liability that arises from an act of a spouse.
> (c) A spouse does not act as an agent for the other spouse solely because of the marriage relationship.

Tex. Fam. Code Ann. § 3.201 (Vernon 2006).

Several Texas courts since the enactment of Section 3.201 (or its predecessor statute) have noted that *Cockerham* was decided prior to the enactment of the Texas Legislature's express statement of the circumstances under which one spouse will be personally liable for the debts incurred by the other spouse during the marriage, and have distinguished *Cockerham* on that ground. For example, in *Providian Nat'l Bank v. Ebarb*, 180 S.W.3d 898 (Tex. App. – Beaumont 2005), the Texas Court of Appeals noted that:

> The Bank relies on *Cockerham v. Cockerham*, 527 S.W.2d 162, 171 (Tex. 1975), and argues there is a presumption that debts incurred during marriage are 'community debts' unless the creditor agreed to look solely to the contracting spouse's separate estate for satisfaction of the debt. However, that argument does not answer the question of whether a spouse is personally liable under Section 3.201 on a particular debt. Subsequent to the holding in *Cockerham*, the Legislature amended the Family Code by adding [Section 3.201]. The trial court properly looked to the provisions of that statute to determine whether [the husband] was liable for the debt incurred by [the wife].

*Providian*, at 902 (holding that the husband was not personally liable for credit card debt where the wife alone signed the credit application). *See also Patel v. Kuciemba*, 82 S.W.3d 589 (Tex. App. – Corpus Christi 2002) (wife not liable on notes signed solely by husband); *Nelson v. Citizens Bank*

---

[10] When what is now Section 3.201 was enacted in 1987, it was numbered as Section 4.031. It was, however, substantially the same as the version effective today (with minor differences not relevant here).

*and Trust Co.*, 881 S.W.2d 128 (Tex. App. – Houston [1ˢᵗ Div.] 1994) (wife not liable for deficiency on note guaranteed solely by husband).

Other courts have noted that the enactment of Section 3.201 has no effect on the rule of *Cockerham*, but they have done so in factual circumstances vastly different than those present in the Case. For example, the case of *Mock v. Mock*, 216 S.W.3d 370 (Tex. App. – Eastland 2006) involved divorcing spouses, and the wife was ordered to pay credit card debts incurred solely in her husband's name. The wife asserted on appeal that the trial court's order ran counter to Section 3.201. The Court of Appeals noted that Section 3.201 "has no effect on the long-standing presumption that debts contracted during the marriage are presumed to be incurred on the credit of the community and, thus, are joint community obligations," citing *Cockerham*. However, the Court of Appeals pointed out that the wife's argument "fails to recognize the distinction between community liability for a debt and personal liability for a debt." *Mock*, at 373. Because the wife had been awarded community property in the divorce (which would be reachable to satisfy debts incurred by the husband) and had made no showing that the property she was awarded was her sole management community property (which would not be liable for her husband's debts), the trial court's order was proper. *See also Jackson v. Jackson*, No. 05-01-01719-CV, 2002 WL 31513388 (Tex. App. – Dallas Nov. 13, 2002) (not designated for publication) (same). Again, the issue in these divorce cases is whether one spouse holds *property*, by virtue of the division of community property, that could be liable for the other spouse's debts, such that the spouse who is awarded that property can be ordered to pay those debts.

Several courts have continued to look to *Cockerham*, despite the enactment of Section 3.201, in order to determine whether a particular liability is a "joint" liability. *See, e.g., Morgan v. Morgan*,

No. B14-88-00566-CV, 1989 WL 97528 (Tex. App. – Houston [14 Dist.] Aug. 24, 1989). In the *Morgan* case, a divorcing husband was ordered to pay debts incurred by his corporation. He appealed, arguing that the debts were "community debts" for which his wife was also liable. The *Morgan* court noted that the fact that a debt is a community debt does not necessarily mean that both spouses are personally liable. Rather than looking to Section 3.201, the *Morgan* court continued to look to the totality of the circumstances to determine whether the debt was a joint debt. *See also Marynick v. Bockelmann*, 773 S.W.2d 665 (Tex. App. – Dallas 1989), *rev'd on other grounds*, 788 S.W.2d 569 (Tex. 1990). In the *Marynick* case, a landlord was seeking to hold the wife liable for a lease modification signed only by her husband. Once again, the Texas Court of Appeals noted that the fact that debts are community debts does not, without more, necessarily lead to the conclusion that they are joint liabilities, and the Court then looked to the *Cockerham* test to determine whether the debt at issue was the joint personal liability of the husband and wife.

At first glance, these latter cases appear difficult to reconcile with Section 3.201 of the Texas Family Code.[11] However, the Court believes that the facially conflicting case law in Texas with regard to the application of the *Cockerham* test after the enactment of Section 3.201 can be harmonized.

The *Cockerham* case was construing Section 3.202's predecessor, and the threshold question was whether one spouse's separate property was "subject to the liabilities of the other spouse." The

---

[11] At least one well-reasoned article has concluded that applying a *Cockerham* analysis after the enactment of Section 3.201 is the result of "confusion" created by the phrase "community debts" and is inconsistent with the statutory scheme. The authors conclude that "recent legislation should be interpreted as putting an end to the *Cockerham* test." Featherston, *Marital Liability in Texas ... Til Death, Divorce or Bankruptcy Do They Part*, 44 Baylor L. Rev. 1 (Winter 1992). If this Court's efforts to reconcile these cases with Section 3.201 is unpersuasive, this Court agrees with the authors' conclusion that the terms of Section 3.201 of the Texas Family Code trump the *Cockerham* test, which should no longer be applied when deciding the issue of spousal liability.

*Cockerham* court examined the totality of the circumstances, and determined that the dress shop debts were not "liabilities of the other spouse" – *i.e.*, they were joint liabilities of both spouses. The *Cockerham* court did so, however, based upon the acts of E.A. Cockerham himself, not based upon the acts of Mrs. Cockerham. E.A. Cockerham had taken several actions consistent with a finding that the debts were *his* and not solely those of his spouse. Section 3.201, however, deals with the entirely different circumstance in which one spouse is sought to be held liable for the acts solely of the other – *i.e.*, not based upon his or her own acts, or because of the nature of the debts themselves – *i.e.*, for "necessaries." In the latter cases, the courts apply the test set forth in Section 3.201.

In other words, the *Cockerham* test may retain vitality where someone is seeking to hold one spouse jointly liable for a debt based on *that spouse's* acts where the debt is facially owed by the other spouse. But, the test of Section 3.201 applies when someone is seeking to hold one spouse personally liable based on the acts *of the other spouse. See, e.g., Carr v. Houston Business Forms, Inc.*, 794 S.W.2d 849 (Tex. App. – Houston [14 Dist.] 1990) (a juror instruction respecting the *Cockerham* test was not error, but it was error to fail to also instruct the jury with respect to Section 3.201's predecessor statute).

Harmonized in this manner, it is clear that Honda does not hold an allowable claim against the Debtor.[12] To the extent that the Debtor wishes to be personally liable for the debt owed to Honda as a result of Trammell signing the Retail Installment Contract (itself an odd argument), she would

---

[12] The parties spent portions of their briefs arguing about whether or not Honda is a "creditor." The relevant question, however, is whether Honda holds an allowable claim against the Debtor. The term "creditor" as defined in 11 U.S.C. § 101(10) and as is relevant here, means an entity that has a *claim* against the debtor, or an entity that has a "community claim." This definition, coupled with those of the terms "claim" and "community claim" in 11 U.S.C. §§ 101(5) and (7) respectively, establish that the terms "claim" and "community claim" mean two different things. Section 541(a)(2)(B) refers solely to an entity that holds an allowable *claim* against the debtor.

**Memorandum Opinion and Order**                                                          **16**

need to establish that either (1) Trammell was acting as her agent, or (2) that the debt was for "necessaries" within the meaning of Section 3.201. She has not done either.

To the extent that the Debtor wishes to be personally liable for the debt owed to Honda as a result of her *own* acts, then she would have to establish acts that would suffice under *Cockerham*. The only acts she is alleged to have taken with respect to the Honda are (i) she sat next to Trammell when he bought the Vehicle, and (ii) she drives the Vehicle. Clearly, those acts are factually distinguishable from the facts of *Cockerham*, where the non-contracting spouse clearly manifested his intent to be liable on the dress shop debts. *See, e.g. In re Knobel*, 167 B.R. 436, 440 n. 8 (Bankr. W.D. Tex. 1994) (stating that a spouse is not personally liable for community debt absent a showing of agency, joint venture, or *implied or express assumption of liability* and citing *Cockerham*). In fact, the Court notes that in each of the reported cases in which a Texas court has applied *Cockerham* to determine personal liability on a debt contracted by the other spouse, it has found no liability. *Patel v. Kuciemba*, 82 S.W.3d 589 (Tex. App. – Corpus Christi 2002) (wife not liable on notes signed by husband alone); *Nelson v. Citizens Bank & Trust Co.*, 881 S.W.2d 128 (Tex. App. – Houston [1st Dist.] 1994) (wife not liable on note guaranteed solely by husband); *Marynick v. Bockelmann*, 773 S.W.2d 665 (Tex. App. – Dallas 1989), *rev'd on other grounds* 788 S.W.2d 569 (Tex. 1990) (wife not liable on lease modification contract signed solely by husband). The Debtor's acts here fail to manifest her intent to be liable on the Vehicle debt.

For these reasons, the Court holds that the Vehicle is not property of the estate under Section 541(a)(2)(B).[13]

---

[13] Other creditors of the Debtor are not harmed by this conclusion. Because there is no equity in the Vehicle by the Debtor's own admission (in the schedules), none of the Debtor's other creditors would be able to reach her interest in the Vehicle for the satisfaction of their debts in any event.

**B.** **Because the Vehicle is not Property of the Estate, the Amended Motion is Largely Moot**

As noted previously, in the Amended Motion, Honda seeks to "lift the Automatic Stay as it pertains to the vehicle set out herein," and to "permit Honda . . . to exercise its state law remedies pursuant to the terms of the Retail Installment Sale Contract . . . ." Amended Motion, ¶¶ 7, 8. For the reasons explained below, the Court cannot grant the requested relief.

First, the Court notes that the automatic stay operates to prevent actions; it does not attach only to particular property, such as the Vehicle. Honda's prayer for relief in the Amended Motion – *i.e.*, to "lift the automatic stay as it pertains to the vehicle" – while common shorthand nomenclature used by bankruptcy practitioners, is less than precise. Nevertheless, the Court holds that to the extent Honda wants to perform some act by which it will obtain possession of the Vehicle (*i.e.*, to repossess the Vehicle), and/or exercise control over the Vehicle (*i.e.* conduct a UCC sale of the Vehicle), its acts are not stayed because the Vehicle is not property of the estate.

Second, to the extent that Honda seeks to exercise other "state law remedies pursuant to the terms of the Retail Installment Contract," Honda's acts may or may not be stayed.[14] The Retail Installment Sale Contract attached to the Amended Motion is illegible, and the Court cannot determine what "state law remedies" Honda is entitled to or desires to pursue and the Court cannot therefore determine whether those actions would be stayed and, if so, whether relief from the stay would be appropriate.

_____

[14] For example, the Debtor argues that the Retail Installment Contract permits Honda to seek a deficiency judgment in the event that it repossesses the Vehicle and sells it but the proceeds are insufficient to pay off the note. The Debtor argues that she has cash in a bank account that is presumptively community property, subject to the joint management and control of both spouses. The Debtor therefore argues that the cash is property of the estate, and Honda could "seek to collect from the cash and funds . . . for payment of the Note." Debtor's Brief in Opp. To Mot. For Relief from Stay, p. 8.

**Memorandum Opinion and Order** **18**

For these reasons, the Amended Motion is denied.

SO ORDERED.


# # # END OF MEMORANDUM OPINION AND ORDER # # #